Case number five for today is United States v. Yang. Mr. Sir. Thank you, Your Honor. May it please the Court. The District Court committed reversible error in denying Defendant Yang's motion to suppress evidence found during the traffic stop. First and foremost, the Court mistakenly concluded that Officer Harvath had a reasonable suspicion that drug trafficking conduct was afoot based on the circumstances and the facts that he saw. Second, the District Court committed clear error in concluding that Officer Harvath had a reasonable suspicion that the Dodge Ram in which Yang and the other occupants were driving slowly rolled through the stop sign at the intersection of Oakton and Duespen. And third, the District Court committed error in concluding that the prolonged nature of the stop was constitutional. I want to talk first about Harvath's suspicion that Yang and the others were engaged in some sort of drug trafficking conduct based on what he observed. That conclusion was simply unreasonable. It's reversible. Counsel, I very much doubt that that matters if the police had probable cause to stop him for a traffic violation. The District Court took evidence and found that there was probable cause to stop him for a traffic violation. Is there any other issue in this case after that? No, Your Honor. If Your Honor's, if this Court concludes that the District Court did not commit clear error, then we lose. Well, this was just a question about do you believe the officer who said he saw him roll through the stop sign? Well, more than one. And it's pretty well established that credibility findings by a district judge don't get upset on appeal unless the district judge believes something that's contrary to the special theory of relativity or something else that you can't deny. No, I think, I think it's, I think that goes too far, Your Honor. I think that yes. All right, the general theory of relativity. Still goes too far. Look, in general courts, this court does not disturb a credibility determination about a witness testifying below. But here, a few things. First things first, the District Court did have video that he was presented by the government. That video is, is in contradiction with what Officer Harvath testified about. Is it your argument that that video is conclusive? That shows that he stopped? Look, I, I, I've seen the video. So have I, Your Honor. And I think it is pretty conclusive that he did stop. You think that video, we could clearly say shows him stopping. I think it can, Your Honor. You, if you look at that, that video in slow motion and, and in, in real time as well, what you see are a number of factors. First and foremost, when you look at the orientation of the vehicle, orientation of the lights on the vehicle vis-a-vis the surroundings, there's no motion for a good two or three seconds as the brake lights of the vehicle are illuminated. Do you agree that it's also a reasonable interpretation that it is very grainy and you cannot tell the specifics of it? Sure. The video is grainy, but I don't think it's so grainy that you can't see what I just described. And more importantly, that actually goes to... I must say, why do you equate two seconds brake with coming to a full stop? So I, the, the lights are on longer than two seconds. I'm, I'm talking about the, the critical moment while the lights are illuminated. The, the brake lights are on for at least five seconds, and we don't know how long they're on because by the time the car turns the corner, as soon as the car is in view of the dash cam, the video camera, the brake lights are indeed illuminated and they're illuminated for the next five seconds of the video. So they're, they're on for at least five seconds. I think the, the, the video shows the vehicle stopped, but that's not really the question. And indeed, that's the question. The government made in its brief, the question is whether, uh, the district court committed clear error in concluding that, uh, officer Harvath had reasonable suspicion to believe that the vehicle stopped. And what the video absolutely does show is just how bad the vantage point was for officer Harvath to make that conclusion, which is why the credibility determination should not stand. He was 600 feet away from, uh, the, the Ram at the time of the stop. He was driving his own vehicle, so he had to actually pay attention to the road as he's driving. He's not sitting in the passenger seat while someone else is driving the vehicle. So his, his, uh, concentration is diverted between watching the Ram and watching the road while he drives. He takes the corner at first and at the start, uh, his, uh, view is obstructed by the house that sits at the corner of Kellogg and Oakton. And then when he finally turns the corner, he doesn't have the opportunity to see whether the wheels, the tires on the Ram are spinning, which would be a clear indication that the vehicle is indeed rolling through the stop sign. So he is making a determination, the officer Harvath, that the vehicle is moving based on essentially your honor, what you are seeing in that video that, that you say is hard to see, which is that whether or not the vehicle is, is moving based on the body of the vehicle itself, not based on any other information. Um, and he's doing that at the time that he is accelerating down the street to catch up with the vehicle. That is an unreasonable vantage point from hit for him to conclude that he saw the vehicle slow roll through subtly roll through the stop sign. That's what makes this a clear error by the district court. Um, and, and it's worth making the point about how this, how we know that this really is at most a subtle roll through the intersection. It's not, it's not the sort of situation where the vehicle lasted through the intersection at full speed or at even at five or 10 miles an hour, which would easily be seen. It's not an instance where there's some other obvious traffic violation that can be seen that officer Harvath saw or that the video picked up. It is slow, subtle movements that officer Harvath wanted the district judge to believe he observed in that moment, despite all the vantage problems that I just described. That's unreasonable. And, and that your honor, that is the basis on which we are, are asking this court to reverse the district court's opinion. I'm happy to talk about the unreasonable nature of Harvath's determination that there was drug trafficking activity afoot. Uh, but if your honors don't have any questions, I'll Good morning and may it please the court. My name is Jonathan Koenig and I appear on behalf of the United States this morning. Um, I think I will accept Judge Easterbrook's invitation to focus on the traffic violation in this case because it frankly seems to me the simplest and surest ground for affirmance, uh, in this case. Uh, counsel would dearly like to litigate, uh, in this appellate tribunal, the question of whether a traffic violation actually occurred. Uh, Cole, a recent en banc decision of this court, uh, teaches us that the issue is whether the officer reasonably, reasonably believed he saw a violation, not whether a violation actually occurred. And so, was Judge Griesbach entitled to, uh, rely on his determination that the officer's testimony was credible in resolving this whole question of whether the truck rolled through the intersection or not? Um, and this is, I would submit, very much a situation where the judge's, the district judge's credibility determination isn't credible and is entitled to deference. Um, I don't even know what the special law of relativity is, but it doesn't seem like there's anything, um, facially incredible about that determination. And so, it is entitled to deference. Um. And, and Mr. Koenig, the driver, Zimdars, did not testify at the hearing, correct? That's correct, Your Honor. Just the two officers? Yes. And I would also point out that it's rather late in the day to be, um, asking questions. I mean, I commend my colleague for doing a deep dive on the video and coming up with a lot of good questions. Were the tires spinning? Could you really see so well if you had to focus on your own driving? But none of those questions were asked at the evidentiary hearing. Um, so, we would submit that Judge Griesbach's determination on this point is solid and determinative. There was some discussion in the reply brief about the issue of whether the officers unduly prolonged the stop under the Rodriguez line of cases, and I just want, if I may, to direct the Court to some portions of the record that will support, um, our argument that that argument is waived. First of all, the motion to suppress itself stated that law enforcement will not be able to point to specific and articulable facts that justify the traffic stop or its extension. We then have an evidentiary hearing. My colleague gets up first to give a preview of the evidence and takes some trouble to discuss this question. Did officers unduly prolong the stop? Then counsel for the defendant stands up and says, um, the main basis for my motion is that I disagree that the evidence will show that law enforcement did have the appropriate reasonable suspicion to conduct the traffic stop. Not so much arguing that it was extended, given the nature of what occurred. Here he's referring to how, um, this entire encounter was, um, brought to a sudden climax when Yang refused to cooperate as he was getting out of the car. Um, officers... So you're saying that statement, not so much arguing it was extended, is an intentional relinquishment of that argument as opposed to a forfeited? Yes, Your Honor. If waiver is a voluntary relinquishment of a known right, the known right here would be the right to argue that officers unduly prolonged the stop. Um, to me that seems like a pretty clear statement. And then that's followed by a post-hearing brief in which there's no mention of the issue. If that's all we had, then we would be in agreement. Uh, now on the merits, this was a seven minute encounter and Officer Horvath was in the midst of processing the traffic violation and encountering some technical difficulties, by the way, with the databases that he needed to consult. Uh, when he had to get out of his car and deal with this situation with Yang, the dog who had been brought to the scene for an exterior sniff was never even deployed in this situation. So, on the merits... And with regard to the questioning that's going back and forth between the occupants of the vehicle and the officers, Yang is questioning the stop and that's to Horvath, correct? I believe so, yes. Does Yang also question the stop as to Russell on his side of the car? It's possible, Your Honor, that there's a discussion that both officers are part of. I would really have to go back and look. I'm sorry, I don't know off the top of my head. But it was an initiated, at least a portion of the discussion with regard to the purpose of the stop was being initiated by the defendant? Yes. And, you know, I suppose that from the government's perspective, an additional reason to find Horvath credible is that there is discussion on the scene of the traffic stop. It's not something the officer invented for purposes of the evidentiary hearing. And there were other questions asked, but to return to the Cole decision, Cole says that officers can ask questions unrelated to the basis for the stop. And they did. You know, what were you doing earlier? Why are you up so late? All those kinds of things. But the government would submit that even if the court disagrees with us on reasonable suspicion of drug trafficking, the stop is justified and it was not unduly prolonged beyond what was necessary to address that traffic violation. Happy to answer any other questions or attempt to do so. Thank you. Thank you. Anything further, Mr. Shor? A few points. Judge Brennan, it's unclear because we don't have video into the vehicle at the moment that my client asked about why they were being stopped, whether he was directing that question to Horvath or to Russell. They're talking. The only reason why the voices and the discussion seems divorced at all is just because of whose microphone is closest to the voice being uttered. So I don't know that you can read into that at all. But that is the point. The point on that third component of this argument, that even if the stop is prolonged, that the duration of the stop is unconstitutionally prolonged, is that the officers did nothing to investigate the traffic stop. I lose, without a doubt, if this court concludes that Horvath actually had a reasonable suspicion that there was drug trafficking afoot. Because that's the questions that the officers were asking in the first two to three minutes of the stop. But there was nothing about the traffic stop. And so if this court concludes that the only basis on which the stop was constitutional was the traffic stop, then they did, the officers did unconstitutionally prolong the stop. Now, the government says, well, it wasn't 22 minutes. And they cite the one case where 22 minutes was too long. But that's not this court's or any other court's jurisprudence. The jurisprudence is, if there is any deviation from the mission of the stop, and if the questions were not related to the traffic stop, then it is a deviation. That deviation is unconstitutional. And I think that's what we have here. Your Honor, my memory is that the general theory of relativity is that no body in motion, no mass in motion, can exceed the speed of light. If we had a vehicle that was... That's actually an assumption of the general theory of relativity and not one of its outputs. That's right. That's right. But that's the best I can do without having access to any of that at the moment. And I'll say that if the vehicle here, the RAM, was anywhere close to that speed, I would lose. That's the whole point. The vehicle is slowly moving through the... Right. The third point here, getting serious again, is I take umbrage with how the government has been and continues to argue this case as if it was our responsibility to establish any evidence. This is a criminal defendant on a case on an evidentiary hearing where the government has the burden of proof. He's saying, well, the defense attorney didn't ask questions at the district court about whether the tires were spinning or about any of these other factors, that the defense attorney failed to establish evidence. Not our job. This was entirely the government's responsibility. The defendant has the burden on a motion to suppress. That's not what the government actually said. The government said... It is what the law provides. No, my understanding is that... You can't just say, I move to suppress and then rest. Really, you can't. No, but there were more factors there. Forgive me for not having the case law in front of me, but I know that it is more nuanced than that. And I'd be happy to submit a 28-J if necessary at this point. If we think more is called for, we will let you know. I appreciate that. Your Honor, I ask the court to reverse. Thank you for your time. Thank you very much. The case is taken under advisement. And Mr. Zerv, we appreciate your willingness and that of your law firm to accept the appointment in this case and your assistance to the court as well as your client. Thank you. The case is taken under advisement.